**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

RONAIKEL R.C.G.,

Petitioner,

Civil No. 26-4045 (JRT/DTS)

v.

TODD BLANCHE, *Attorney General of the United States*;

MARKWAYNE MULLIN, *Secretary, U.S. Department of Homeland Security*;

DAVID J. VENTURELLA, *Acting Director, U.S. Immigration and Customs Enforcement*;

DAVID EASTERWOOD, *Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*; and

SHERIFF JOEL BROTT,

Respondents.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

---

Katherine Rollins, **MACDONALD HOAGUE & BAYLESS**, 801 South Marquette Avenue, Suite 200, Minneapolis, MN 55402, for Petitioner.

David W. Fuller and Pedro Del Valle, IV, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Federal Respondents.

David W. Fuller, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Respondent Joel Brott.

Petitioner Ronaikel R.C.G. is a citizen of Venezuela and a resident of Faribault, Minnesota who is currently in Immigration and Customs Enforcement ("ICE") custody in Minnesota. On September 18, 2026, Petitioner filed a Petition for a Writ of Habeas Corpus alleging that his arrest and continued detention violate the Fourth and Fifth Amendments of the U.S. Constitution, the Administrative Procedures Act ("APA"), and the *Accardi* doctrine.

The Court concludes that Petitioner's continued detention violates his Fifth Amendment right to procedural due process. The Court will grant the petition in part and will order that Petitioner receive an individualized bond hearing.

**BACKGROUND**

**I. FACTS**

Petitioner is a citizen of Venezuela. (Pet. Writ of Habeas Corpus ("Pet.") ¶ 8, Sept. 18, 2026, Docket No. 1.) He has resided in the United States since 2023 and is currently a resident of Faribault, Minnesota. (*Id.* ¶ 14.)

On November 15, 2023, Petitioner applied for admission into the United States at a port of entry in San Ysidro, California. (Decl. of James Vandervaart ¶ 4 ("Vandervaart Decl."), Sept. 23, 2026, Docket No. 6.) On November 15, 2023, United States Department of Homeland Security ("DHS") served a Notice to Appear (Form I-862) on Petitioner. (*Id.* ¶ 5 & Ex. C; *see* Pet. ¶ 15 (erroneously indicating Notice of Appear was issued November 25, 2023).) Customs and Border Patrol paroled Petitioner into the United States until

November 15, 2025, pursuant to INA § 212(d)(5) [8 USC § 1182(d)(5)(A)]. (Vandervaart Decl. ¶ 4 & Ex. B.) Petitioner indicates he has a pending asylum application, filed October 21, 2024. (Pet. ¶ 16 )

On August 7, 2026, the Faribault Police Department arrested Petitioner for domestic assault and interfering with an emergency telephone call. (Vandervaart Decl. ¶ 6.) That same day, ICE issued an I-200 arrest warrant and lodged a detainer to the Rice County Jail. (*Id.* ¶ 7 & Ex E.) Petitioner was held at Rice County Jail on August 8 and 9, 2026. (Pet. ¶ 21.) Petitioner appeared in Rice County Court on August 10, 2026. (*Id.* ¶ 22.) After his appearance and upon Petitioner's release from Rice County detention, ICE placed Petitioner under arrest and transported him to Fort Snelling for administrative processing. (*Id.* ¶¶ 22–23; *see also* Vandervaart Decl. ¶ 8.) Documentation provided by Respondents indicates that an ICE/ERO Deportation Officer served Petitioner with the I-200 arrest warrant, at the Rice County Jail. (Vandervaart Decl. ¶ 8 & Ex. E.)

## II. PROCEDURAL HISTORY

On September 18, 2026, Petitioner filed a Verified Petition for Writ of Habeas Corpus, contending that his arrest was unlawful under the Fourth Amendment and his detention is unlawful under the Due Process Clause of the Fifth Amendment, the APA, and the *Accardi* doctrine. The Court directed Respondents to file a reasoned memorandum responding to Petitioner's claims. (Docket No. 3.) Respondents timely filed their response, and Petitioner replied. (Docket Nos. 5, 7.)

## DISCUSSION

Petitioner argues that his arrest was unlawful because ICE did not provide him with a copy of the I-200 warrant at the time of his arrest. In the alternative, Petitioner contends that the statutory provision that authorizes his arrest and detention is 8 U.S.C. § 1226(a), which provides that he must be granted an individualized bond hearing. Respondents argue that Petitioner was lawfully arrested, and that Petitioner (1) is an "arriving alien" by virtue of his asylum application and thus is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) and (2) is an applicant for admission and is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

### A. Petitioner's Arrest

Respondents arrested Petitioner pursuant to an I-200 administrative warrant issued three days prior to Petitioner's arrest. (Vandervaart Decl., Ex. E.) Petitioner alleges he was "not served with an arrest warrant prior to or at the time of his arrest." (Pet. ¶ 66.) But while an immigration officer is obligated to "[i]dentify himself or herself as an immigration officer who is authorized to execute an arrest" and to "[s]tate that the person is under arrest and the reason for the arrest[,]" ICE regulations do not obligate the immigration officer to give a copy of the arrest warrant to the person at the time of the arrest. *See* 8 C.F.R. § 287.8; *see also, e.g.*, *Tanneh W. S. v. Blanche*, Civ. No. 26-2775, 2026 WL 1801140, at *3 (D. Minn. June 23, 2026) ("[A]n administrative arrest warrant need not be served to be valid; rather, it need only be 'issued.'"). Accordingly, the Court concludes that ICE did not effectuate a warrantless arrest.

**B. Mandatory Detention Under § 1225(b)(1)(B)**

To the extent Respondents assert Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), the Court disagrees for the reasons previously explained in *Mervis E.A.M. v. Noem*, Civ. No. 26-861, 2026 WL 323636 (D. Minn. Feb. 6, 2026) and *Enrique F.G. v. Blanche*, Civ. No. 26-3457, 2026 WL 2350338 (D. Minn. Aug. 13, 2026). The subsection on which Respondents rely provides: "Any [noncitizen] subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).

Section 1225(b)(1)(B)(**ii**) provides that if an immigration officer "determines at the time of the interview that an [asylum applicant] has a credible fear of persecution," then the noncitizen "shall be detained for further consideration of the application for asylum." Only if the immigration officer determines the asylum applicant "does **not** have a credible fear of persecution," § 1225(b)(1)(B)(iii)(I), does one turn to § 1225(b)(1)(B)(**iii**), entitled "Removal without further review if no credible fear of persecution[.]" Section 1225(b)(1)(B)(iii)(IV), requiring mandatory detention, only applies to non-citizens "subject to the procedures under this clause"—that is, non-citizens who have been found to have no credible fear of persecution.

First, the record does not reflect that a credible fear interview ever occurred. Absent such an interview, Petitioner cannot be detained under § 1225(b)(1)(B)(ii) because "the interview is a condition precedent to any subsequent detention." *Mervis E.A.M.*, 2026 WL 323636, at * 1. Nor can the Petitioner be detained under

§ 1225(b)(1)(B)(iii)(IV)—because in the absence of a credible fear interview, no officer can have determined that the non-citizen "does not have a credible fear of persecution . . . ." § 1225(b)(1)(B)(iii)(I).

Second, for the reasons set forth in *Abdirashid H.M.*, § 1225(b)(1)(B)(ii) does not mandate detention of individuals seeking asylum who have been present in the United States for years, as the Petitioner has here. In short, the Court concludes that while § 1225(b)(1)(B)(ii) provides for the initial mandatory detention of noncitizens, it does not authorize the mandatory detention of those noncitizens once they have been paroled into the country and released. *See Abdirashid H.M. v. Noem*, Civ. No. 25-4779, 2026 WL 127698, at *3 (D. Minn. Jan. 9, 2026)

**C. "Arriving Alien"**

Respondents further argue that Petitioner is subject to detention because he is an "arriving alien" and is therefore subject to detention under 8 U.S.C. § 1225(b)(2)(A), as interpreted in *Avila v. Bondi*, 170 F. 4th 1128 (8th Cir. 2026)). But unlike Avila who "entered the United States without inspection or admission" and had lived in the country for years without seeking admission, *id.* at 1132, Petitioner is an asylum applicant. As the Seventh Circuit explained in *Cirrus Rojas v. Olson*, 183 F.4th 909, 914–15 (7th Cir. 2026), Petitioner "is not seeking admission: the relief he now seeks, asylum . . . is not admission as the statute and Supreme Court case law use that term. . . ."

Accordingly, the Court concludes that Petitioner is not subject to mandatory detention under § 1225(b)(1)(B)(iii)(IV) or § 1225(b)(2)(A).

### D. Invocation of 8 USC § 1226

Petitioner argues that the statutory provision that authorizes his arrest and detention is 8 U.S.C. § 1226(a). Indeed, Respondents invoked 8 USC § 1226 in the Form I-200 administrative warrant. (Vandervaart Decl. ¶ 9 & Ex. E.)[1] Because Respondents represented to Petitioner that his arrest was based on § 1226(a), the Court will hold Respondent to those representations. *Hector J.A.S. v. Shea*, Civ. No. 26-2242, 2026 WL 1243500, at *2 (D. Minn. May 6, 2026); *see also Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 969–70 (D. Minn. 2025) (concluding Petitioner was arrested and detained pursuant to § 1226(a) based on representations in his warrant). The Court therefore considers Petitioner subject to the discretionary detention framework set forth in 8 U.S.C. § 1226.

### E. Remedy

The Court therefore turns to the proper remedy. Because Petitioner is subject to the discretionary detention framework set forth in 8 U.S.C. § 1226, a bond hearing pursuant to § 1226(a) is the appropriate remedy.[2]

---

[1] The warrant was directed to: "Any immigration officer authorized pursuant to sections 236 [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Vandervaart Decl., Ex. E.)

[2] Petitioner suggests that a bond redetermination hearing is likely to be futile and requests that the Court order immediate release. While the Court is aware of Immigration Judges denying requests for a bond hearing under *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the Court is not aware of Immigration Judges denying a bond hearing that has been ordered by this Court. The Court will, therefore, order that Petitioner receive a bond hearing, affording him all proceedings and rights provided by § 1226 and its corresponding regulations.

Further, even if Respondents had not previously chosen to invoke § 1226 in Petitioner's case, the Court would nevertheless find that his detention without the opportunity for a bond violates his due process rights under the three-part test in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), as set forth in *Axel J.M.C. v. Stanski*, Civ. No. 26-2281, 2026 WL 1171344, at *3–4 (D. Minn. Apr. 29, 2026).

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner Ronaikel R.C.G.'s Petition for Writ of Habeas Corpus (Docket No. [1]) is **GRANTED IN PART** as follows:

1. Respondents shall provide Petitioner with an individualized bond hearing within seven (7) days of the date of this Order, in which both parties will be allowed to present evidence and argument about whether Petitioner is a danger to the community and presents a flight risk if not detained; Petitioner shall be afforded all proceedings and rights provided by § 1226 and its corresponding regulations.

2. If Respondents do not provide Petitioner with an individualized bond hearing as required herein, Petitioner must be immediately released from detention. **A proceeding in which bond is denied by the immigration judge for lack of jurisdiction does not satisfy Respondents' obligation to provide a bond hearing in compliance with this Order, and in such case, the Court will order release from custody**.

3. **By 3:00 P.M. on October 9, 2026**, the parties shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding Petitioner's release. Further, the parties shall advise the Court at that time whether any additional proceedings in this matter are required and submit any proposals for the scope of further litigation.

DATED: October 2, 2026
at Minneapolis, Minnesota.

/s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge